JaLOTTINGER, Chief Judge.
This is an appeal from an order of rehabilitation granted to James H. Brown, Commissioner of Insurance (Commissioner) against *424 appellant, Pelican State Mutual Insurance Company (Pelican). Pelican’s main contention is that the Commissioner’s actions were premature.
CHRONOLOGY
In May of 1992, the Commissioner appointed a certified financial examiner, Constance Korte, to examine the records and accounts of Pelican. Korte’s initial inquiries revealed that several assets on Pelican’s March 31, 1992 quarterly report were non-admissible assets and that according to Pelican’s own consulting actuary, its loss reserves and loss adjustment expenses were inadequate. Korte also discovered that Pelican had severe cash flow problems.
In a meeting with the Commissioner on June 26, 1992, Pelican’s representatives acknowledged their concerns over the financial condition of the company. They advised the Commissioner that although they had sold and spent $2.3 million in liquid stock and bond investments, a sale of premium finance notes was imminent, negotiations for the mortgage of the company’s' headquarters were about to be concluded, a capital infusion by outside investors was in active negotiations and certain figures in Korte’s preliminary reports were in error. The parties scheduled a subsequent meeting to discuss Korte’s reports; however, Pelican’s representatives failed to appear.
On July 8, 1992, with the continued deterioration of the financial condition of Pelican, including its negative cash flow, the inaccuracy of data used to calculate loss reserves, the fact that the company sold and spent its $2.3 million portfolio of stocks and bonds, its unsuccessful attempts to sell or mortgage additional assets, and its unsuccessful attempts to obtain an additional capital infusion, the Commissioner determined that the company lacked sufficient cash and liquid assets to continue to pay claims, and that further transaction of the company’s business would be hazardous to its policy holders, creditors and the public. ThejjCommissioner filed a petition for order of conservation and injunc-tive relief and for rule to show cause why an order to rehabilitate or liquidate the company should not be entered. On July 9, 1992, the trial judge issued the injunction and placed Pelican in conservation.
Coinciding with Korte’s examination, the Commissioner retained Scruggs Consulting Corporation (Scruggs) to perform an actuarial analysis and issue an actuarial opinion as to the adequacy of the loss reserves and loss adjustment expenses reported by Pelican. On July 14, 1992, Scruggs advised the Commissioner that preliminary investigations indicated that Pelican’s loss reserves were deficient.
On July 17, 1992, Pelican moved for an expedited hearing on the rehabilitation rule; the hearing was set for August 10. Pelican filed the dilatory exception raising the objection of prematurity on July 21, 1992. Meanwhile, the examinations by Korte and Scruggs were concluded on August 5 and August 7, 1992, respectively.
At the hearing, the trial court denied Pelican’s exception and granted the Commissioner’s petition for an order of rehabilitation of Pelican and its subsidiary, Magnolia Fire and Casualty Insurance Company. Pelican appeals, raising three main issues:
1) The Commissioner’s failure to comply with La.R.S. 22:1301-1316 in conducting the financial examination of Pelican rendered these regulatory proceedings premature.
2) Under La.R.S. 22:904(B), actuarial opinion must be “phased in,” and in the absence of rules and regulations for such phase in, the action of the commissioner was premature.
3) The actuarial opinions should have been excluded because determinations of solvency or insolvency do not include actuarial opinions of loss reserves or loss adjustment expense reserves.
ISSUE ONE
Pelican contends that the Commissioner’s actions in seeking the orders of conservation and rehabilitation were premature because the Commissioner sought l4the orders prior to completing his examination of the books and records of Pelican and without providing Pelican with an opportunity to respond prior to seeking the orders.
*425 A. A FINANCIAL EXAMINATION IS NOT A PREREQUISITE TO ORDERS OF CONSERVATION, REHABILITATION OR LIQUIDATION
Pelican contends that the Commissioner must comply with the provisions of La.R.S. 22:1301-1316 prior to institution of any regulatory action. Pelican sets forth the following argument. The provisions of La. R.S. 22:1301 authorize the Commissioner to examine the books and records of an insurance company when, in his opinion, it is necessary. La.R.S. 22:1305 authorizes the Commissioner to employ an examiner for the purpose of such an examination. La.R.S. 22:1312 compels the Commissioner to prepare a written report of such examination, to certify the report, submit a copy to the insurer, and provide the insurer with an opportunity to respond to the report.[1] According to Pelican, the examination must be complete and an insurer must have an opportunity to respond to the examination report before the Commissioner seeks an order of conservation under La.R.S. 22:756.1 or an order of rehabilitation under La.R.S. 22:733.
In presenting this argument, Pelican cites no jurisprudential or statutory authority requiring the Commissioner to defer action until a final examination report is submitted, traversed and filed. Additionally, the statutory provisions concerning examinations and examination reports are not referenced in the provisions which govern conservation, rehabilitation and liquidation.
An insolvent or hazardous insurance company is put into conservation, rehabilitation or liquidation in accordance with the requisites of Chapter 1 Part XVI of the Insurance Code. Financial examinations are not prerequisites to the provisions of Part XVI. Whether a financial examination is complete is irrelevant to institution of regulatory actions under Part XVI. Thus, the question to be resolved in this case 1 sis whether the Commissioner and the trial court complied with the provisions of Part XVI when instituting and conducting these regulatory proceedings.
B. CHAPTER 1 PART XVI OF THE INSURANCE CODE CONTAINS THE PROPER PROCEDURE FOR OBTAINING ORDERS OF CONSERVATION, REHABILITATION AND LIQUIDATION
La.R.S. 22:733 sets forth sixteen grounds upon which the Commissioner may file a petition seeking an order of rehabilitation or liquidation of an insurance company.[2] In *426 conjunction with the petition, the Commissioner may |7request orders of conservation and injunction as authorized by La.R.S. 22:734 and 22:756.1. La.R.S. 22:734 provides that the court may, after the filing of the petition, issue an injunction restraining officers, agents, directors, employees, and other persons from transacting business or disposing of company property. La.R.S. 22:756.1. authorizes an order of conservation upon the filing of a verified petition alleging conditions that would justify injunctive relief and alleging that the interests of creditors, policyholders or the public will probably be endangered by delay.
In the present case, preliminary investigations revealed that Pelican was financially unstable and that its continued operations would be hazardous to its policyholders, creditors or the public. According to § 733(A)(1) and (A)(5), the Commissioner had sufficient grounds to seek rehabilitation or liquidation. Based on the preliminary findings, the Commissioner filed a petition for order of conservation and injunctive relief and for rule to show cause why an order to rehabilitate or liquidate should not be entered. The trial court granted the order of conservation and injunctive relief. Pelican contends that the granting of the ex parte order of conservation was premature because it did not have an opportunity to be heard.
The conservation order was granted in accordance with La.R.S. 22:756.1 A, which provides that:
Upon the filing by the commissioner of insurance of a verified petition alleging that with respect to a domestic company a condition exists that would justify a court order for proceedings under R.S. 22:734, and that the interests of creditors, policyholders, or the public will probably be endangered by delay, then the court ... shall issue forthwith without a hearing its order directing the commissioner of insurance to take possession and control of the property, business, books, records, and accounts of the company and of the premises occupied by it for the transaction of its business, or such part of each as the petition shall specify, and enjoining the Iscompany and its officers, directors, agents, servants, and employees from disposition of its property and from transaction of its business except with the concurrence of the commissioner of insurance until the further order of the court. (Emphasis Added.)
Because § 756.1 A specifically provides that an order of conservation may be issued “without a hearing,” we find that the trial court properly granted the ex parte order.
After granting the order of conservation, and following a four day hearing, the trial judge issued an order of rehabilitation. Pelican asserts that this action was also premature because it did not have an opportunity to respond to the grounds upon which the *427 Commissioner sought the order. We find no merit in this argument.'
The rehabilitation order was issued in accordance with La.R.S. 22:735 which provides, in pertinent part:
A. On the return of such order to show cause and after a full hearing, which shall be held by the court without delay, the court shall enter an order either dismissing the petition or finding that sufficient cause exists for rehabilitation or liquidation ... (Emphasis Added).
Although an insurer is not entitled to a hearing under La.R.S. 22:756.1, it is entitled to a full hearing prior to the issuance of an order of rehabilitation. In this case, the rehabilitation order was issued after a four-day hearing. Pelican had ample opportunity to respond to the grounds upon which the Commissioner sought the order. For this reason, we find that the Commissioner acted timely and the trial court followed proper procedure when issuing the rehabilitation order.
ISSUE TWO
Pelican next asserts that in the absence of proper rules and regulations promulgated by the Commissioner pursuant to La.R.S. 22:904(B), the Commissioner’s action was premature because it was based on actuarial opinion.
La.R.S. 22:904 provides that:
A. Beginning January 1, 1992, the loss reserves under policies of personal injury liability insurance, policies of employer’s liability insurance, and policies of worker’s compensation insurance shall be accompa-niedjgby a statement of the opinion of an associate or fellow of the Casualty Actuarial Society or other qualified loss reserve specialist, setting forth his opinion relative to the reasonableness and sufficiency of loss and loss adjustment expense reserves.
B. The commissioner of insurance shall adopt reasonable rules and regulations for the implementation and administration of the provisions of this requirement, with due consideration of the establishment of a proper phase-in, thresholds for certification requirements based on premium volume or product lines or both, insurance solvency standards tests as performed by the National Association of Insurance Commissioners, and the financial condition of each insurer to which these requirements apply.
At trial, Pelican’s president, Michael Bowler, stated that Pelican submitted an actuarial opinion with its 1991 statement because Pelican believed that it was required to do so under § 904. However, Pelican asserts that this opinion, and all other actuarial opinions, cannot be considered by the Commissioner because the Commissioner did not promulgate rules and regulations as required by § 904(B).
Section 904(A) imposes a new requirement by directing insurers to attach to their annual statement, the opinion of an actuary attesting to the fact that the reserves reported are proper. Section 904(B) directs the Commissioner to establish rules and regulations “for the implementation and administration” of the filing requirement, giving “due consideration of the establishment of a proper phase-in period.” For the following reasons, we conclude that the Commissioner’s reliance on actuarial opinions in seeking the order of rehabilitation was not affected by his failure to promulgate rules under § 904(B) for submission of such opinions by insurance companies.
The provisions of the Insurance Code, and more specifically § 904, have never prohibited the Commissioner from considering actuarial opinions when investigating the stability of an insurance company. The legislative history of § 904 reveals that the legislature was addressing the problem of insurance companies overestimating their reserves in order to prolong the companies’ lives before going insolvent. The statute eliminates the problem by requiring insurers to submit | ^actuarial opinions with their annual reports. In subsection B, the Commissioner has been instructed to “phase-in” the new filing requirement. This “phase-in” period eliminates hardship on insurance companies by gradually implementing the filing requirement.
The provisions of § 904 apply only to the filing of actuarial opinions by insurance companies. The statute in no way restricts the Commissioner’s pre-existing right to rely on actuarial opinions when conducting investigations.
*428 In this case, three actuarial statements as to the reasonableness of Pelican’s loss reserves were prepared. Two of the opinions were compiled by actuaries hired by Pelican and one was prepared by the Commissioner’s actuary, Scruggs. Pelican submitted the most favorable of its two reports with its 1991 statement; even that report showed Pelican’s reserves to be inadequate. The two remaining reports revealed that Pelican’s reserves were deficient by several million dollars. Because the Commissioner could properly rely on these actuarial opinions when investigating Pelican, we conclude that the trial court did not err in denying Pelican’s exception of prematurity.
ISSUE THREE
Finally, Pelican contends that the trial court erred in allowing the actuarial opinions to be used to determine Pelican’s solvency. Pelican asserts that in determining solvency, the court must apply La.R.S. 22:732.2[3] which requires that Insolvency be determined according to certain statutory provisions.
Assuming that Pelican is correct and the actuarial opinions should not have been used to determine Pelican’s solvency, there is no affect on the trial court’s order of rehabilitation. The Commissioner set forth two grounds for seeking the order of rehabilitation. These grounds were that Pelican: hazardous to its policyholders, or to its creditors, or to the public; ....
(1) Has obligations or claims exceeding its assets, cannot pay its contracts in full, or is otherwise found by the commissioner of insurance to be insolvent; or
(5) Is found to be in such condition that its farther transaction of business would be
La.R.S. 22:733(A)(1) and (5).
Although the trial court found that Pelican was insolvent, the evidence clearly supports the conclusion that Pelican’s continued business would have been hazardous to its policyholders or its creditors or the public. Thus, even if the actuarial opinions were inadmissible for determining Pelican’s solvency, the order of rehabilitation would have been issued under § 733(A)(5).
For this reason we find that this assignment of error is without merit.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court. All costs of this appeal are assessed against Pelican.
AFFIRMED.

. La.R.S. 22:1312 was repealed in 1992.

. The Commissioner may seek rehabilitation or liquidation when the following conditions exist:
A. Whenever any domestic insurer:
(1) Has obligations or claims exceeding its assets, cannot pay its contracts in full, or is otherwise found by the commissioner of insurance to be insolvent; or
(2) Has refused to submit its books, papers, accounts, records or affairs to the reasonable inspection or examination of the commissioner of insurance, or his actuaries, supervisors, deputies, or examiners; or
(3) Has neglected or refused to observe an order of the commissioner of insurance to make good within the time prescribed by law any deficiency, whenever its capital, if a stock insurer, or its required surplus, if an insurer other than stock, shall have become impaired; or
(4) Has, by articles of consolidation, contract or reinsurance or otherwise, transferred or attempted to transfer its entire property or business not in conformity with this Code, or entered into any transaction the effect of which is to merge substantially its entire property or business in any other insurer without having first obtained the written approval of the commissioner of insurance pursuant to the provisions of this Code; or
(5) Is found to be in such condition that its further transaction of business would be hazardous to its policyholders, or to its creditors, or to the public; or
(6) Has an officer who has refused upon reasonable demand to be examined under oath touching its affairs; or
(7) Is found to be in such condition that it could not meet the requirements for organization and authorization as required by law, except as to the amount of the surplus required of a stock insurer in R.S. 22:71, and except as to the amount of the surplus required by this Code to be maintained; or
(8) Has ceased for the period of one year to transact insurance business; or
(9) Has commenced, or has attempted to commence, any voluntary liquidation or dissolution proceedings, or any proceeding to procure the appointment of a receiver, liquidator, rehabilitator, sequestrator, or similar officer for itself; or
(10) If a party, either plaintiff or defendant in any proceeding in which an application is *426 made for the appointment of a receiver, custodian, liquidator, rehabilitator, sequestrator or similar officer, for such insurer or its property, or a receiver, custodian, liquidator, rehabili-tator, sequestrator or similar officer, for such insurer or its property is appointed by any court, or such appointment is imminent; or
(11) Consents to such an order by a majority of its directors, stockholders or members; or
(12) Has not organized and obtained a certificate authorizing it to commence the transaction of its business within the period of time prescribed by the sections of this Code under which it is or proposes to be organized; or
(13) Gives reasonable cause to believe that there has been embezzlement from the insurer, wrongful sequestration or diversion of the insurer's assets, forgery or fraud affecting the insurer, or other illegal conduct in, by, or with respect to the insurer that if established would endanger assets in an amount threatening the solvency of the insurer; or
(14) Within the previous four years, the insurer has willfully violated its charter or articles of incorporation, its bylaws, any insurance law of this state, or any valid order of the commissioner, or failed to maintain adequate records in accordance with statutory accounting practices and generally accepted accounting principles; or
(15) Has failed to file its annual report or other financial report required by R.S. 22:1451 within the time allowed by law and, within ten days of receipt of written demand by the commissioner, has failed to provide the report; or
(16) Has failed to pay a final judgment rendered against it in any state upon any insurance contract issued or assumed by it, within sixty days after the judgment became final or within sixty days after time for taking an appeal has expired, or within sixty days after dismissal of an appeal before final determination whichever date is the later ...

. (3)(a) “Insolvency" or “insolvent” shall mean:
[[Image here]]
(ii) ... the inability to pay its obligations when they are due, or a condition when its admitted assets do not exceed its liabilities plus the greater of:
(aa) Any capital and surplus required by law for its organization.
(bb) The total par or stated value of its authorized and issued capital stock.
(b) As to any insurer licensed to do business in this state as of the effective date of this Part which does not meet that standard established under Item (ii) of this Subparagraph, the term “insolvency” or "insolvent” shall mean, for a period not to exceed three years from the effective date of this Part, that it is unable to pay its obligations when they are due or that its admitted assets do not exceed its liabilities plus any required capital contribution ordered by the commissioner under provisions of the insurance law.
(c) For purposes of this Paragraph, “liabilities” shall include but not be limited to reserves required by statute, by general regulations of the Department of Insurance or by specific requirements imposed by the commissioner upon a subject company at the time of admission or subsequent thereto. (Footnote omitted.)